## CHARLES SHIPLEY *vs.* THE BALTIMORE AND POTO-MAC RAIL ROAD COMPANY.

*Constitutionality of the Act of 1870, ch. 80, providing for taking private property for the Construction and repair of a Rail Road—Construction of the same Act.*

Article III, section 40 of the Constitution of Maryland forbids the Legislature to enact any "law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties or awarded by a jury, being first paid or tendered to the party entitled to such compensation."

Section 6 of the Act of 1870, ch. 80, being the amended charter of the B. & P. Railroad Co.; authorizes the taking "of any land, earth, gravel, stone, timber, streams or materials, or any improvements which may be wanted for the proper construction or repair of any of said roads, or any of their works." and requires the jury to "justly and impartially value the *damages* which the owner or owners will sustain by the use and occupation of the *property* required by the said company, and also the *benefits* or *advantages* to accrue to the owner or owners by the construction of the said road, as a set-off to the said damages, *but only in extinguishment of the claim for damages, and not for the actual value of the land or other material taken,* and after having made a fair and just set-off of the *advantages* and *disadvantages* arising from the construction of the said railroad, they shall estimate and determine what amount of damages has been or may be sustained by the said owner or owners respectively." HELD:

1st. That under this provision, the jury are required in all cases to estimate in the first instance, and as an essential and primary element of damages, the actual value of the land or property proposed to be taken, and then to consider what other and incidental damages will result to the owner, by reason of the use or occupation thereof for the purposes of the road, and against these latter only, are any benefits or advantages to be set-off.

2d. That thus construed, this section of the Act does not contravene the Constitutional provision.

*Concessum,* that under the head of benefits the land owner is not to be charged with those *general* benefits which he shares in common with the community at large, but only with those *special* benefits which accrue to him by reason of the construction of the road through his land.

Shipley *vs.* Baltimore and Potomac R. R. Co.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The facts are sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MAULSBY, MILLER and ALVEY, J.

*Charles Marshall*, for the appellant.

The only question presented by the appeal is the constitutionality of that provision of the charter of the appellee, which authorizes the jury of inquisition, to value the benefits and advantages, to accrue to the owner of the property to be taken on account of the construction of the road, and to set them off against the damages to be awarded to him.

The Legislature had no power to pass such a law, under the provisions of Article 3, section 40, of the Constitution.

The Act of incorporation of the appellee, introduces elements into the ascertainment of the compensation of the owner of property, taken by the company, which prevent that compensation from being "just:"

It deducts from his just compensation an amount for benefits which the company could not lawfully claim from others equally benefited, but whose property is not actually taken. *Little Miami R. R. Co. vs. Collett*, 6 *Ohio N. S.*, 182; *Pacific R. R. vs. Chrystal*, 25 *Missouri*, 544.

It deducts an amount to pay the company for *general benefits*, for which the State had already fully compensated it by the grant of its franchises and powers, and to which as a citizen he is entitled. *Giesey vs. Cin., Wil. and Zanesville R. R.* 4 *Ohio, N. S.*, 308; *Opelousas R. R. vs. Lagarde*, 10 *La. Ann.*, 150; *Rail Road vs. Gilson*, 8 *Watts*, 243; *Evansville, &c., R. R. vs. Fitzpatrick*, 10 *Ind.*, 120; *State vs. Miller*, 3 *Zabriskie*, 383; *Hill vs. M. & H. R. R.*, 5 *Denio*, 206; *Keasy vs. Louisville*, 4 *Dana*, 154; *People vs. Mayor, &c.*, 5 *Barb.*, 44; *Palmer Co. vs. Ferrill*, 17 *Pick.*, 58; *Cushman vs. Smith*,

34 *Maine*, 247; *Winona and St. Peter R. R. vs. Waldron*, 11 *Min.*, 515; 1 *Redfield on Railways*, 233.

It deducts an amount to pay the company for *special benefits* conferred upon his property by the construction of the road, for the enjoyment of which special benefits he is, nevertheless, required to pay the company again in tolls, whenever he attempts to avail himself of the supposed benefits.

It does not require the jury, like the Act of 1825, ch. 180, to ascertain the *value* of the property at all. It creates but one fund for the benefit of the owner, and that is the *damages*, and from that fund it directs the jury to deduct all estimated advantages, general and special.

The compensation which the jury is authorized to give under this law, cannot be said to be "just" in any sense, nor as the rule of just compensation is established by the decision in 5 *Md.*, 324, and in the case of 9 *G. & J.*, 480.

The law cannot constitutionally authorize the jury to deduct supposed benefits to the owner, from the amount of damages to which they believe him to be entitled by reason of the taking and use of his property by the corporation, and, in any case, the land taken must be valued. 2 *Kent's Comm.*, (*marg.*,) 339, *note; Jacob vs. City of Louisville*, 9 *Dana*, 114; *Rice vs. Turnpike Co.*, 7 *Dana*, 81; *Woodfolk vs. N. & C. R. R.*, 2 *Swan*, (*Tennessee*,) 422.

*Daniel Clarke*, for the appellee.

It is contended that the provision which prescribes the oath to be taken by the jurors, and the mode of assessing the damages, is in conflict with Article 3, section 40, of the Constitution.

Private property in this State, prior to the Constitution of 1851, when this provision was first inserted, could not be taken for public use, nor under the right of eminent domain could this right be conferred upon a private corporation, without making just compensation. *Tide-Water Canal Company vs. Archer*, 9 *G. & J.*, 479; *Binney's Case*, 2 *Bland*, 99; *War-*

*ing vs. Waring,* 2 *Bland,* 673; *Hepburn's Case,* 3 *Bland,* 95; *Williams' Case,* 3 *Bl.,* 186; *Bellona Co.'s Case,* 3 *Bl.,* 442.

Section 40, of Article 3, therefore, does not make any change in the want of power of the Legislature to pass laws authorizing the taking of private property for public use *without just compensation.* This power the Legislature never possessed. But prior to the Constitution of 1851, when this section was first introduced, the compensation might be made either *subsequent* or *prior* to the taking of the property. And the change which this section made, was to secure to the citizen the payment or tender of the just compensation agreed upon or awarded by a jury, *prior* to the taking of his property. He was not to be placed in the position of being deprived of his property, and then driven to the delays of the law to secure compensation. *Hoye vs. Swan,* 5 *Md.,* 237; *Moale vs. Mayor and City Council,* 5 *Md.,* 314; *Steuart vs. Mayor and City Council,* 7 *Md.,* 500; *Hamilton vs. Annapolis R. R. Co.,* 1 *Md. Ch. Dec.,* 107, affirmed in 1 *Md.,* 553; *Harness vs. Ches. and Ohio Canal Co.,* 1 *Md. Ch. Dec.,* 248; *Reddall vs. Bryan, et al.,* 14 *Md.,* 444; *West. Md. R. R. Co. vs. Owings, et al.,* 15 *Md.,* 199; *State ex rel. McClellan vs. Graves,* 19 *Md.,* 351.

The 3d section of Article 40, of the Constitution, does not introduce any new rule as to the mode of arriving at the "just compensation," but only prescribes the *time* when the "just compensation" shall be made. "Damages" are compensation given as an equivalent for injury sustained. It should be commensurate with the injury. *Sedgwick on Damages,* 29, 30; *Rockwood vs. Allen,* 7 *Mass.,* 254; *Bussy vs. Donaldson,* 4 *Dallas,* 206; *Denter vs. Spear,* 4 *Mason,* 115; *Angell on Water-courses,* 5, 473.

The 6th sec. of the Act of 1870, ch. 80, amending the Act of 1853, ch. 194, requires the jurors, in arriving at the damages:

1st. To value the damages which the owner or owners will sustain by the use and occupation of the property required by the company.

2d. Then the benefits or advantages to accrue to the owner or owners by the construction of the said road, as a set-off to the said damages.

3d. But in making the set-off, the advantages or benefits are only to go in extinguishment of the claim for damages, *and not for the actual value of the land.*

4th. After making a fair and just off-set of the advantages and disadvantages arising from the *construction of the railroad,* they shall estimate and determine what amount of damages *has been or may be sustained by said owner or owners respectively.*

In carrying out the first branch of their oath, the value of the land actually taken is the first item of damage; then comes fencing; inconveniences in crossing from one part of the land to another; and a number of other items, unnecessary to be specified.

Under the head of benefits, it is not contended that the land owner is to be charged with those *general* benefits which he shares in common with the community at large, but only with those *special* benefits which accrue to him by reason of the construction of the road through his land. But what benefits the jury are authorized to off-set under this section of the charter of the company, is a question of judicial interpretation, which the land owner can avail himself of at the trial or condemnation of his property. It is not a question which determines the *constitutionality* of the provision.

To charge the land owner with the special benefits conferred upon him by the construction of a railroad, as an off-set to the injury sustained, in order to arrive at the damage, exclusive of the actual value of the land or other material taken, is a just mode of giving compensation. Damages, exclusive of the value of land actually taken, constitute the difference between benefit or advantage conferred, and injury or disadvantage sustained.

Such a rule the charter prescribes, in addition to the value of the land actually taken, and the same is not in conflict

with the Constitution. 1 *Pierce on Am. Railroad Law*, 206, 211; *Jacob vs. City of Louisville*, 9 *Dana*, 114; *Opelousas R. R. Co. vs. Lagarde*, 10 *La. Ann.*, 150; *Symonds vs. Cincinnati*, 14 *Ohio*, 174; *McIntire vs. State*, 5 *Blackf.*, 384; *Alton & Sangamon R. R. Co. vs. Carpenter*, 14 *Ill.*, 192; *Hatch vs. Vt. Central R. R. Co.*, 25 *Vt.*, 66; *Nicholson vs. N. Y. & N. H. R. R. Co.*, 22 *Conn.*, 74, 88; *Nichols vs. Bridgeport*, 23 *Conn.*, 189; *Rexford vs. Knight*, 15 *Barb.*, 627; *Livermore vs. Jamaica*, 23 *Vt.*, 361; *Meacham vs. Fitchburg R. R. Co.*, 4 *Cushing*, 291, *Upton vs. South Reading Branch R. R. Co.*, 8 *Cushing*, 600; *Cushman vs. Smith*, 34 *Maine*, 247.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order refusing an injunction to restrain the appellees from entering upon the land of the appellant under color of an alleged condemnation thereof for the use of their railroad. The bill admits the inquisition, its confirmation, and tender of the damages thereby awarded, and the sole ground of complaint is, that the provision in the amended charter of the company, under which the inquisition was taken, allowing benefits and advantages to be set-off against damages, is repugnant to that clause of the Constitution which forbids the Legislature to enact any " law authorizing private property to be taken for public use without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation." The constitutionality of this provision of the charter is, therefore, the sole question presented by this appeal, and to determine it, we must first ascertain the true construction and effect of the assailed provision, so far at least as the power of the Legislature to enact it may, by possibility, be thereby affected.

The condemnation clause in the original charter of this company (Act of 1853, chapter 194, section 13,) authorizes the taking " of any land, earth or materials, or any improvements which may be wanted for the construction or repairs "

of the road or works, and requires the jury of inquest to justly and impartially value the damages, which the owner or owners will sustain by the use or occupation of the same required by the company." The amendment (Act of 1870, chapter 80, section 6,) authorizes the taking "of any land, earth, gravel, stone, timber, streams or materials, or any improvements which may be wanted for the proper construction or repair of any of said roads, or any of their works," and requires the jury to "justly and impartially value the *damages* which the owner or owners will sustain by the use and occupation of the *property* required by the said company, and also the *benefits* or *advantages* to accrue to the owner or owners by the construction of the said road as a set-off to the said damages, *but only in extinguishment of the claim for damages, and not for the actual value of the land or other material taken,* and after having made a fair and just set-off of the *advantages* and *disadvantages* arising from the construction of the said railroad, they shall estimate and determine what amount of damages has been or may be sustained by the said owner or owners respectively."

Though it might have been more explicitly stated, it is yet quite clear to our minds that, under this provision, the jury are required in all cases to estimate in the first instance, and as an essential and primary element of damages, the actual value of the land or property proposed to be taken, and then to consider what other and incidental damages will result to the owner, by reason of the use or occupation thereof for the purposes of the road, and against these latter only are any benefits or advantages to be set-off, so that in no case does the law permit their final estimate to fall below the real fair market value of the land or other property actually taken and used.

The case before us presents only the question of constitutional power, and we are not, therefore, called upon to define what constitute these other and incidental damages, or what are the benefits and advantages that may be set-off against

them.   These must depend upon the circumstances of each case, and both parties have their remedy for any misconduct or error of the jury in this respect, by exceptions to the confirmation of the inquisition before the proper tribunal.   It may be remarked, however, that the counsel for the company has very properly conceded that, under the head of benefits, the land-owner is not to be charged with those *general* benefits which he shares in common with the community at large, but only with those *special* benefits which accrue to him by reason of the construction of the road through his land. Thus construed, (and that such is its true construction, we have no doubt,) the provision is free from most of the objections to its constitutionality so forcibly presented in the very able argument of the appellant's counsel.   It seems to have been framed for the express purpose of avoiding any conflict with the doctrine announced by the Court of Appeals of Kentucky in *Jacob vs. City of Louisville,* 9 *Dana,* 114, and more recently by the Supreme Court of Tennessee in *Woodfolk vs. Nashville and Chattanooga R. R. Co.,* 2 *Swan,* 422, viz: that the just compensation to the owner for taking his property for public use without his consent, means the actual value of the property in money, without any deductions for benefits and advantages, and that the Legislature can lawfully authorize these latter to be off-set only against such incidental damages or injuries, in addition to the intrinsic value of the property taken, as may result to him from the taking thereof.   In most of the other States where the question has arisen, a different doctrine has prevailed, and their Courts have held that it is competent for the Legislature to provide that benefits and advantages accruing to the proprietor, shall constitute just compensation, even to the extent of extinguishing the value of the land or other property taken.   In this State, no adjudication directly and decisively affecting the power of the Legislature to make a provision going to this extent, in the charter of a private corporation, has yet been made, and it will be time enough to decide that question when it is distinctly pre-

sented. It does not arise in this case, for, as we have seen, the charter of this company contains no such provision, but carefully avoids the objection by providing that benefits and advantages shall not be set-off as against "the actual value of the land or other material taken." We entertain no doubt of the constitutionality of the provision, and the order refusing the injunction must therefore be affirmed.

*Order affirmed.*

(Decided 25th May, 1871.)